878 P.2d 787

**Charlie TRANMER and Larry Gilman, dba G.T. Investments, an Idaho partnership, Plaintiffs–Appellants,**

v.

**Kent HELMER, Bob MacDonald, Michael Anderson, Kootenai County Commissioners, Defendants–Respondents.**

No. 20639.

Supreme Court of Idaho.

July 11, 1994.

Rehearing Denied Aug. 25, 1994.

Malcolm S. Dymkoski, Coeur d'Alene, for appellants.

William J. Douglas, Kootenai County Pros. Atty., Coeur d'Alene, for respondents. Scott L. Wayman argued.

TROUT, Justice.

This appeal arises from the denial of a writ of mandamus to compel the Kootenai County Board of Commissioners (Commissioners) to approve and record a plat. The appellants, Charlie Tranmer and Larry Gilman (Tranmer and Gilman), are owners of real property in Kootenai County who sought to subdivide that property into three parcels, each of which exceeded ten acres. To that end they presented a plat map of the three parcels together with an application to the Commissioners for approval. Following a public hearing, the Planning and Zoning Commission recommended that the plat not be approved. The Commissioners then met and refused to approve the plat, reasoning that the plat presented a threat of ground water contamination to the underground aquifer.

Thereafter, Tranmer and Gilman brought an action for a writ of mandamus in district court to force the Commissioners to approve the plat. They argued that they were proceeding under Idaho Code § 50–1301 et seq., which required the Commissioners to· approve the plat so long as it met all technical requirements of the statutes. Thus they contended that the Commissioners had no discretion and that a writ of mandamus was the appropriate means of compelling the Commissioners to take the ministerial action of approving the plat.

The district court denied the writ of mandamus, finding that the Commissioners were entitled to consider both the technical plat provisions in title 50, chapter 13, as well as

the provisions of the Local Planning Act in determining whether or not to approve the plat. The district court concluded that determining whether the plat complied with the Local Planning Act involved an exercise of discretion by the Commissioners; thus, a writ of mandamus was not appropriate. For a somewhat different reason, we conclude that the district court was correct in denying the application for a writ of mandamus.

## THE DISTRICT COURT WAS CORRECT TO DENY THE WRIT OF MANDAMUS

In reviewing the denial of a writ of mandamus, we are required to review whether the district court properly determined that the acts sought to be compelled were discretionary rather than ministerial. In the context of a zoning decision we have held:

> A Writ of Mandate will lie to require administrative action in zoning matters only when the party seeking the writ "has a clear legal right to have an act performed[,] ... the officer against whom the writ is sought has a clear legal duty to act ... and ... the act be ministerial and not require the exercise of discretion." (citations omitted).

*Wyckoff v. Board of County Comm'rs of Ada County,* 101 Idaho 12, 14, 607 P.2d 1066, 1068 (1980).

Tranmer and Gilman argue that under I.C. § 50–1308, once a plat meets all the technical requirements of title 50, chapter 13, Idaho Code, the plat must be approved. In support they point to the specific phrase in I.C. § 50–1308 which provides: "the plat thereof shall be submitted, accepted and approved by the board of commissioners of a county in which the tract is located...." Tranmer and Gilman assert this provision leaves no room for discretion in the approval process and thus they are entitled to the writ of mandamus. On the other hand, the Commissioners respond that they were entitled to consider the requirements of the Local Planning Act in determining whether to approve the plat, which involves an exercise of discretion.

Neither argument deals with the specific question of whether the statutes in question even apply to the plat at issue.

I.C. § 50–1308 provides in part as follows:

**Approvals.**—(1) If a *subdivision* is not within the corporate limits of a city, the plat thereof shall be submitted, accepted and approved by the board of commissioners of the county in which the tract is located in the same manner and as herein provided. If the city or county has established a planning commission, then all plats must be submitted to said commission in accordance with the provisions of § 50–1106, Idaho Code.[1] No plat of the subdivision requiring city approval shall be accepted for record by the county recorder unless said plat shall have first been submitted to the city, and has been accepted and approved, and shall have written thereon the acceptance and approval of the said city council, and bear the signature of the city engineer and city clerk.... (emphasis added).

It is clear that I.C. § 50–1308 only requires that a plat be approved by the county commissioners prior to its recording when it is a subdivision plat. Likewise, I.C. § 50–1310 provides that "[a]ll *approved plats of subdivisions* shall, upon the payment of the required fees, be filed by the county clerk...." (emphasis added.) While other provisions of title 50, chapter 13, may apply to other types of plats (for example, I.C. § 50–1303 makes reference to "all town plats, subdivisions and cemetery plats" and "plat" is defined in I.C. § 50–1301(3) as: "The drawing, map or plan of a subdivision, cemetery, townsite or other tract of land...."), it is clear that the above quoted portion of I.C. § 50–1308 on which Tranmer and Gilman rely applies only to subdivision plats.

Thus it becomes necessary to determine which plats fall within this requirement for "subdivisions". I.C. § 50–1301(11) defines "subdivision" as follows:

> A tract of land divided into five (5) or more lots, parcels, or sites for the purpose of

---

1. Idaho Code § 50–1106 was repealed on July 1, 1975, and replaced with the Local Planning Act of 1975, I.C. §§ 67–6501 through –6529.

sale or building development, whether immediate or future; provided that this definition shall not include a bona fide division or partition of agricultural land for agricultural purposes ... Cities or counties may adopt their own definition of subdivision in lieu of the above definition.

Kootenai County has adopted a subdivision ordinance which contains a separate definition of "subdivision".

*SECTION 1.05 APPLICABILITY*

The division of land into 5 or more lots, parcels, tracts, or sites for the purpose of sale of [sic] lease whether immediate or future, shall preceed [sic] in compliance with this Ordinance ... All divisions from the original contiguous ownership from the effective date of Ordinance # 15 (May 14, 1974) Kootenai County Subdivision Ordinance, whether by original or subsequent owners, shall be counted in the application of these subdivisions procedures.

EXCEPTIONS: The provisions of this chapter shall not apply to:

1. Divisions of land where the smallest lot is not less than ten (10) acres (gross area to include road right-of-way) when each parcel divided meets the minimum frontage requirements of the Zoning Ordinance....

The plat proposed by Tranmer and Gilman to be recorded does not meet either the definition of "subdivision" in § 50–1301(11) or that of the Kootenai County ordinance. During oral argument the attorney for the Commissioners asserted that property owned by Tranmer and Gilman contiguous to the three lots here at issue was previously divided, and thus this division did indeed meet the Kootenai County ordinance requirements. There is nothing in the record before us to support this assertion and, therefore, we are able to consider only the three lot division at issue here. By definition it is not a subdivision.

A review of the provisions of I.C. § 50–1301, et. seq. does not reveal any other requirement for plat approval prior to recording, unless the plat has streets designated, in which case there must be approval by the governing agency before those streets are accepted as public rights-of-way. I.C. §§ 50–1309, –1312, and –1313. Indeed, while I.C. § 50–1302 provides that every landowner proposing to subdivide must cause the property to be surveyed and a plat recorded, "[t]his section is not intended to prevent the filing of other plats." Thus we are left with the inescapable conclusion that there is no authority requiring that the Commissioners approve a plat of something other than a subdivision prior to its recording, unless streets are being dedicated for public use. There is no indication in the record that Tranmer and Gilman sought approval to dedicate private streets to the county.

**CONCLUSION**

Because Tranmer and Gilman have no legal right to compel the Commissioners to perform the act of approving the plat before recording, there was no basis upon which to issue the writ of mandamus and it was properly denied. The order of the district court is affirmed. No attorney fees on appeal to either party.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ. concur.